UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| In re: | |
|---|---|
| COMPLETE LANDSCAPING SYSTEMS, INC. | CASE NO: 13-12530-11 |
| DEBTOR | |

## DEBTOR'S CHAPTER 11 PLAN DATED MARCH 30, 2015

### Table of Contents

I.      Definitions
II.     Classes and Treatment
III.    Allowance and Disallowance of Claims
IV.     Provisions for Executory Contract and Unexpired Leases
V.      Means of Implementing the Plan
VI.     Effect of Confirmation of Plan
VII.    Retention of Jurisdiction
VIII.   Other Provisions

## I.      DEFINITIONS

### A.      General Definitions and Rules of Construction

The definitions and rules of construction stated in Code §§ 101 and 102 apply when terms defined or construed in the Code are used in this Plan.

### B.      Specific Definitions

"Acres" means the land owned by the Debtor consisting of approximately 2 acres and located at 4124 N. Old Lawrence Road, Wichita, KS.

"Allowed Claim" means a Claim against the Debtor to the extent it has not been withdrawn, paid in full or otherwise deemed satisfied in full and:

(i) No proof of such Claim has been timely filed or deemed timely filed in the Debtor's Chapter 11 case and the Claim has been scheduled by the Debtor as other than contingent, unliquidated or Disputed and the Claim is not a Disputed Claim or the Claim is a Disputed Claim that has been Resolved as qualifying as an Allowed Claim; or

(ii) Proof of such Claim has been timely filed or deemed timely filed in the Debtor's Chapter 11 case and the Claim is not a Disputed Claim or the Claim is a Disputed Claim that has been Resolved as qualifying as an Allowed Claim; or

(iii) Such Claim is listed in a "Schedule of Allowed Claims" filed with the Bankruptcy Court on or before the Effective Date.

1

**Exhibit B** shall be conclusive as to whether a claim is an "Allowed Claim," unless the claim is listed as "Disputed," in which case the claim shall be determined by the Court upon objection by the Trustee.  In the event no objection is filed, Disputed claims shall be allowed.

"Bankruptcy Code" or "the Code" means Title 11 of the United States Code, as amended.

"Bankruptcy Court" or "the Court" means the unit of the United States District Court for the District of Kansas known as the Bankruptcy Court for that District or such other court of competent jurisdiction exercising jurisdiction over Debtor's Chapter 11 case.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure prescribed by the Supreme Court and reported to Congress pursuant to 28 U.S.C. § 2075, as amended.

"Business Property" means the Debtor's former principal place of business located at 1727 E 2nd Street, Wichita, KS 67214, whose legal description is provided in the treatment of Class 2.

"Cash" means currency, check, draft, wire transfer and other similar forms of payment.

"Claim" has the meaning set forth in § 101(5) of the Bankruptcy Code with respect to the Debtor.

"Claimant" means any person, entity or governmental unit asserting a Claim against the Debtor.

"Confirmation Date" means the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court in the docket for the Debtor's Chapter 11 case, unless otherwise ordered by the Bankruptcy Court or such other court of competent jurisdiction exercising jurisdiction over the matters set forth in the Confirmation Order.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

"Debtor" collectively means Complete Landscaping Systems, Inc., in its capacity as Debtor and Debtor in Possession under Chapter 11 of the Bankruptcy Code.

"Disclosure Statement" means the disclosure statement filed by Debtor in this Chapter 11 case dated March 30, 2015.

"Disputed Claim" means a Claim against the Debtor to the extent such Claim has not been withdrawn and with respect to which an objection to such Claim has been or may be filed in Debtor's Chapter 11 case before or after the Effective Date and which is listed as "Disputed" in the "Treatment" column on **Exhibit B**.

"Effective Date" means the fifteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, unless the confirmation order has been vacated.

2

"Estate" means the Estate created upon the commencement of the Debtor's Chapter 11 case pursuant to § 541(a) of the Bankruptcy Code.

"Home" means the former residence of Laura Ackerman, located at 11015 E 63rd Street S, Derby, KS 67037.

"Household Goods" means certain personal property located at the Home, including but not limited to certain bronze statues, a small pontoon boat, rugs, and a golf cart, all of which is now property of the Estate.

"Petition Date" means September 30, 2013, on which date Debtor filed this Chapter 11 case.

"Plan" means this Plan of Reorganization, dated March 30, 2015, as may be amended or modified by the Debtor in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules.

"Plan Payment Pool" means the net proceeds from the sale of the Business Property, the Home, the Household Goods, and the Acres.

"Plan Proponent" means the party filing the Plan, and for this Plan it means the Debtor.

"Trust" means the estate created by the vesting of all assets of the Estate in David P. Eron as Trustee, under the terms and conditions created by this Plan.

"Trustee" means David P. Eron of Eron Law, P.A.

## II.    CLASSES AND TREATMENT

### A.    Classes of Claims and Interests

#### 1.    *Classes of Secured Claims*
Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Code § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency may be classified as a general unsecured claim.

#### 2.    *Classes of Priority Unsecured Claims*
Certain priority claims that are referred to in Code §§ 507(a)(1), (4), (5), (6),  and (7) are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

#### 3.    *Classes of General Unsecured Claims*
General unsecured claims are not secured by property of the estate and are not entitled to priority under Code § 507(a).

3

#### 4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

**B.     Treatment of Classified Claims and Interests.**

#### 1. *Class 1: Priority Claims.*

Class 1 shall consist of all allowed claims entitled to priority under Code § 507 (except administrative expense claims under § 507(a)(2)). The Class 1 claims shall include any interest incurred prior to the Petition Date, but shall not include any penalties or interest incurred after the Petition Date. **Exhibit B** shall be definitive of the allowed Class 1 Claims, and confirmation of the Plan shall act an allowance of all Class 1 Claims specified on Exhibit B as "Allow" in the Treatment section. Likewise, confirmation of the Plan shall act as a disallowance of any claim in any other category that the one listed on Exhibit B. Specifically, Claim No. 32 filed by Jason's Lawn Service shall be disallowed as a Class 1 claim, as the Claim cites no justification of any sort for allowance as a priority claim. Claim No. 50 filed by Rivers Lawn Care was filed as a priority "wage" claim, but is for an entity, not an employee, and the claim attaches invoices, all of which are more than 180 days old. All claims on Exhibit B identified in the Treatment section as "Disputed" may be subject to dispute and further order of the Court. All claims identified as "Disallowed" shall be permanently barred by an order confirming this Plan. The Class 1 claims shall be paid from the Plan Payment Pool after payment of all allowed administrative expenses of the Trust, followed by payment of all allowed administrative expenses incurred herein. In the event that the Plan Payment Pool is insufficient to satisfy the Class 1 claims, the allowed Class 1 claims shall be paid a pro rata share of the funds remaining in the Plan Payment Pool, in the order of priority set forth in § 507. Class 1 is impaired.

#### 2. *Class 2: Secured Claim of Equity Bank, N.A.*

Class 2 consists of the claim of Equity Bank, N.A. in the amount of $296,330.24, less amounts paid to Equity Bank since the Petition Date, plus interest, escrow costs, and fees incurred since the Petition Date. The Class 2 claim of Equity Bank was filed as proof of claim number 5, reflecting the entire balance as being secured by the Business Property, commonly known as 1717, 1725, and 1727 E. 2nd Street North and 1728 E. Mildred, Wichita, Kansas, 67214, and legally described as:

> Parcel 1: Lot 22, on Second Street, in Mosbacher's Addition to the City of Wichita, Kansas, Sedgwick County, Kansas, Together with that Part of Second Street Adjoining Lot 22 on the North, as originally plated in said addition, lying South of a line 30 feet South of the North line of the South Half of the Northwest Quarter of Section 22, Township 27 South, Range 1 East of the 6th P.M.,

4

Sedgwick County, Kansas that was vacated by the Vacation Order filed in Misc. Book 128, Page 7.

Parcel 2: Lot 55, Except the South 5.72 Feet Thereof, and Lots 57, 59, 61, 63, and 65, on Penn, now Kansas Avenue, Mosbacher's Addition to the City of Wichita, Kansas, Sedgwick County, Kansas.

Parcel 3: Lots 7, 8, and 9, on Second Street, Boulevard Addition to Wichita, Kansas, Sedgwick County, Kansas.

Parcel 4: Lots 14, 15, 16, 17, and 18, on Mildred Avenue, Boulevard Addition to Wichita, Kansas, Sedgwick County, Kansas.

Together with all easements, appurtenances abutting streets and alleys, improvements, buildings, fixtures, tenements, hereditaments, equipment, rents, income, profits and royalties, personal goods of whatever description and all other rights and privileges including all minerals, oil, gas, water (whether groundwater, subterranean or otherwise), water rights (whether riparian, appropriate, or otherwise, and whether or not appurtenant to the above-described real property), wells, well permits, ditches, ditch rights, reservoirs, reservoir rights, reservoir sites, storage rights, dams and water stock that may now, or at any time in the future, be located on and/or used in connection with the above-described real property, payment awards, amounts received from eminent domain, amounts received from any and all insurance payments, and timber which may now or later be located, situated, or affixed on and used in connection therewith.

The Class 2 Claim is secured by a lien against the Business Property. Equity Bank has stipulated that its collateral is worth $331,990, which exceeds the amount of the Class 2 Claim. Pursuant to a compromise, Debtor began making payments to Equity Bank in October 2013 of $4,836.54 a month. Debtor fell behind on its required payments. On December 17, 2014 (doc. no. 309), the Court entered its Order modifying the adequate protection afforded to the Bank, and providing that the Bank would receive a lump sum payment of $15,000 in lieu of its previously awarded adequate protection payments. In exchange, the Court authorized the Debtor to attempt to sell the Business Property by private listing agreement until April 16, 2015. After such date, the Debtor was required to seek Court authority to sell the Business Property at auction. As of the date of the Plan, no offers have been received on the Business Property. In the event that the Business Property is not sold on or before April 16, 2015, the Trustee of the Trust shall conduct an auction of the Business Property on May 22, 2015 at 9:00 a.m. located at Eron Law, P.A., 229 E. William, Suite 100, Wichita, KS 67202. Equity Bank shall be entitled to credit bid the full amount of its Class 2 Claim, without any cost or expense associated with the auction, as provided by 11 U.S.C. § 363(k). In the event that Business Property is sold at auction, such sale shall be authorized by an order confirming the Plan. The sale shall be free and clear of liens pursuant to 11 U.S.C. § 363(f) without further order of the Court, but the Trustee or Equity Bank may seek such an order to the extent necessary or appropriate. The sale at auction shall be subject to the protections of 11 U.S.C. § 363(m), and any purchaser at such auction not be liable for the payment of any claims against the Debtor. In the event that Equity Bank is not the high bidder,

5

the proceeds of the sale shall first be used to satisfy the costs of sale, including, but not limited to, any attorney's fees related to the auction, title and/or escrow fees charged to the Trust, U.S. Trustee fees proportionately attributable to the gross sale proceeds, transfer taxes, recording fees, and any other customary costs of sale. Thereafter, proceeds from the sale shall be used to pay the holder of the Class 2 Claim, up to the full amount of the claim. To the extent there remain proceeds from the sale after the payment of the Class 2 Claim, such proceeds shall be added to the Plan Payment Pool. The treatment set forth herein shall be provided to Equity Bank in full satisfaction of its Class 2 Claim. The Class 2 Claim is impaired.

### 3.  *Class 3: General Unsecured Claims*

Class 3 consists of all timely-filed, unsecured claims allowed under Code § 502 that are not separately classified herein. Debtor estimates the Class 3 Claims at $6,891,286.65, prior to examining the possibility of claims objections. **Exhibit B** shall be definitive of the allowed Class 3 Claims, and confirmation of the Plan shall act an allowance of all Class 3 Claims specified on Exhibit B as "Allow" in the Treatment section. Likewise, confirmation of the Plan shall act as a disallowance of any claim in any other category that the one listed on Exhibit B. All claims on Exhibit B identified in the Treatment section as "Disputed" may be subject to dispute and further order of the Court. All claims identified as "Disallowed" shall be permanently barred by an order confirming this Plan. The Class 3 Claims shall receive a pro rata share of the Plan Payment Pool remaining after the Class 1 Claims are paid in full. In the event that the Class 1 Claims are not paid in full, there will not be any distribution to the Class 3 Claims. Class 3 is impaired.

### 4.  *Class 4: Late-Filed Claims*

Class 4 consists of all claims of any type filed after November 29, 2013, with the exception of allowed administrative expense claims. Debtor estimates the Class 4 allowable claims at approximately $303,286.88, prior to examining the possibility of claims objections. **Exhibit B** shall be definitive of the allowed Class 4 Claims, and confirmation of the Plan shall act an allowance of all Class 4 Claims specified on Exhibit B as "Allow" in the Treatment section. Likewise, confirmation of the Plan shall act as a disallowance of any claim in any other category that the one listed on Exhibit B. All claims on Exhibit B identified in the Treatment section as "Disputed" may be subject to dispute and further order of the Court. All claims identified as "Disallowed" shall be permanently barred by an order confirming this Plan. The Class 4 Claims shall receive a pro rata share of the Plan Payment Pool remaining after the Class 3 Claims are paid in full without interest. In the event that the Class 3 Claims are not paid in full without interest, there will not be any distribution to the Class 3 Claims. Class 3 is impaired.

### 5.  *Class 5: The Secured Claim of Sedgwick County*

Class 5 consists of the claim of Sedgwick County in the amount of $1,390.90, plus any additional taxes accrued but not paid since the filing of the case. The Class 5 claim of Sedgwick County was filed as proof of claim number 94, reflecting the entire balance as being secured by the Acres. The Class 5 Claim is secured by a lien against the Acres. The Trustee of the Trust shall sell the Acres by the most efficient means available. Sedgwick County shall receive not

less than 21 days notice of any proposed sale, and shall be entitled to credit bid the full amount of its Class 5 Claim, without any cost or expense associated with the sale, as provided by 11 U.S.C. § 363(k). In the event that Acres sold at auction or by private contract, such sale shall be authorized by an order confirming the Plan. The sale shall be free and clear of liens pursuant to 11 U.S.C. § 363(f) without further order of the Court. The sale shall be subject to the protections of 11 U.S.C. § 363(m), and any purchaser at such sale shall not be liable for the payment of any claims against the Debtor. In the event that Sedgwick County is not the high bidder, the proceeds of the sale shall first be used to satisfy the costs of sale, including, but not limited to, any attorney's fees related to the sale, realtor or broker commissions, title and/or escrow fees charged to the Trust, U.S. Trustee fees proportionately attributable to the gross sale proceeds, transfer taxes, recording fees, and any other customary costs of sale. Thereafter, proceeds from the sale shall be used to pay the holder of the Class 5 Claim, up to the full amount of the claim. To the extent there remain proceeds from the sale after the payment of the Class 5 Claim, such proceeds shall be added to the Plan Payment Pool. The treatment set forth herein shall be provided to Sedgwick County in full satisfaction of its Class 5 Claim, except that Sedgwick County shall retain all of its rights to continue assessing taxes and shall have relief from stay, from and after the Effective Date, to foreclose any tax liens to the extent its claim is not timely paid. The Class 5 Claim is not impaired.

### 6. Class 6: Equity Interest Holders

Class 7 consists of the equity interests of Peter Salmeron. Salmeron shall not retain his equity interest in the Debtor. Confirmation of the Plan shall effect a final winding up of the affairs of the Debtor. The trustee of the Trust shall be authorized to file any necessary paperwork to close Debtor with the Kansas Secretary of State. Class 6 is impaired.

### 7. Class 7: Interest of the Debtor in Property of the Estate

Debtor shall not retain any interest in its property or the property of the estate not otherwise disposed of under the terms of the Plan. The property shall vest in the Trust upon confirmation. To the extent such property is not specifically addressed under the Plan, it shall be liquidated and the proceeds utilized in a manner consistent with Paragraph IV.A and the remaining provisions of the Plan. Class 7 is impaired.

## C. Treatment of Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. Accordingly, the Plan Proponent has not placed the following claims in any class:

### 1. Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under Code § 507(a)(2). Administrative expenses also include the value of

any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that each administrative expense claim be paid on the Effective Date of the Plan, unless the holder of the claim agrees to a different treatment.  In this case, the Debtor is liquidating.  As a result, the administrative expenses MAY NOT be paid in full.  Creditors holding allowed, administrative expense claims may object to this Plan on that basis.  However, in the event that this Plan cannot be confirmed due to failure to comply with 11 U.S.C. § 1129(a)(9), Debtor may seek a dismissal or "structured dismissal" of this case, which may be less advantageous to the administrative and priority creditors protected by section 1129(a)(9).  Claim Nos. 86 and 113 filed by the Michigan Department of Treasury and 98 filed by the New Jersey Department of Revenue as "administrative" expenses shall not be allowed unless a formal application for allowance of an administrative claim is filed by the administrative claims bar date.  Debtor has not conducted any business in the States of Michigan or New Jersey since the Petition Date.

The following chart lists the Debtor's estimated administrative expenses and their treatment under this Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | AAA Portable ($53.58); Cirus Water ($57.30); Cox ($201.85); National Cont. Insurance ($9,342.50); Regier Carr ($140.00) | Paid in full out of the Plan Payment Pool after payment of the administrative expenses of the Trust. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 days Before the Filing Date | None | Paid in full out of the Plan Payment Pool after payment of the administrative expenses of the Trust. |
| Professional Fees as approved by the Court | Eron Law, P.A. ($10,000 est.); Martin Pringle ($30,000 est.) | Paid in full out of the Plan Payment Pool after payment of the administrative expenses of the Trust. |
| Clerk's Fees | None | Paid in full out of the Plan Payment Pool after payment of the administrative expenses of the Trust. |
| Taxes | KDOR (none); IRS ($67,361.46); Sedgwick County ($3,000 est.) | Paid in full out of the Plan Payment Pool after payment of the administrative expenses of the Trust. |

| U.S. Trustee | $325 | Paid in full out of the Plan Payment Pool after payment of the administrative expenses of the Trust. |
| --- | --- | --- |

### *2.*    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by Code § 507(a)(8). Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.  Though not typically classified, because the priority claims are likely the only recipients of payments out of the Plan Payment Pool, priority tax claims have been included in Class 1, and will be paid after payment of any more senior priority claims as stated therein.

### D.    Treatment of U.S. Trustee Fees

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid as set forth above. The Trustee reserves the right to request a final decree at any time after the Effective Date, including at a time prior to distribution of the Plan Payment Pool.

## III.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

### A.    Disputed Claims

No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.

### B.    Settlement of Disputed Claims

The Trustee will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## IV.    PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumed Executory Contracts and Unexpired Leases

None.

### B.    Rejected Executory Contracts and Unexpired Leases

All leases and executory contracts are rejected.

## V.    MEANS OF IMPLEMENTING THE PLAN

### A.    Source of Payments

On or about May 9, 2015, Debtor or the Trustee, through McCurdy Auctions, will sell the Home at auction to the highest bidder, subject to an undisclosed reserve price.  Proceeds from the sale of the Home will be distributed first in the manner described in the Motion to Approve Compromise, doc. no. 327, which is incorporated herein by reference.  The Household Goods and the Acres shall be sold either at auction or via private treaty sale, in the discretion of the Trustee and subject to approval of the Court.  The Business Property shall be sold as described in Class 2.  The resulting Plan Payment Pool shall be used first to pay administrative expenses of the Trust.  Any remaining funds shall be used to fund the  allowed administrative expenses herein.  Funds remaining thereafter shall be utilized to pay classes 1, 3, and 4, in that order and as described above.  All motions concerning the sale of assets shall be noticed only to the twenty largest unsecured creditors, holders of allowed administrative claims, and holders of allowed Class 1 Claims.  A complete analysis of Debtor's assets is attached to the Disclosure Statement as **Exhibit A**.

### B.    Post-Confirmation Management and the Trust

Upon Plan confirmation, all property of the Estate shall immediately vest in the Complete Landscaping Systems, Inc. Liquidation Trust ("the **Trust**").  David P. Eron of Eron Law, P.A., Wichita, Kansas, shall act as **Trustee**. The Trustee will have all rights and powers of a trustee under the Bankruptcy Code.  The Trustee shall be responsible for liquidating the Home, the Household Goods, the Acres, and the Business Property, as further set forth above.  The Trustee shall pay for the expenses of administering the Trust out of the Plan Payment Pool, and shall thereafter distribute the remaining funds in accordance with this Plan.  All motions concerning the sale of assets shall be noticed by the Trustee to the twenty largest unsecured creditors, holders of allowed administrative claims, and holders of allowed Class 1 Claims.  To the extent necessary, the Confirmation Order shall act as an order authorizing the continued employment of Eron Law, P.A./David P. Eron as attorneys for the Trustee, Dunning & Associates, CPAs LLC as accountants for the Trustee, and McCurdy Auctions as real estate broker/auctioneer for the Trustee.  The Trustee shall be responsible for the dissolution and wind-down of the Debtor's affairs, and shall take all actions necessary or appropriate to accomplish the same, including but not limited to the filing of any final tax returns (all of which shall be filed in the name of the Debtor).  Confirmation of the Plan shall act to dissolve the Estate and the Official Committee for Unsecured Creditors.

## VI.    EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

The Debtor shall not receive a "discharge."  Nonetheless, after Confirmation, and pursuant to 11 U.S.C. §1141(a), no creditor or other party in interest may take any action that would derogate from the terms and conditions of this Plan.

**B. Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan. Upon request of the Trustee, the U.S. Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

**C. Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Trustee, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VII.    RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of the Bankruptcy Code until the proceedings are closed, more specifically with respect to the following matters:

- To classify, allow or disallow Claims and direct distributions of funds under the Plan and to adjudicate all controversies concerning classification or allowance of any Claim or interest.
- To enforce performance of the Plan or any provisions thereof.
- To hear and determine all Claims arising from the rejection of executory contracts, including leases, and to consummate the rejection and termination thereof.
- To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.
- To adjudicate all Claims to an ownership interest in any property of the Debtor or of the estate or any proceeds thereof.
- To adjudicate all Claims or controversies arising out of the purchases, sales or contracts made or undertaken by the Debtor during the pendency of the proceeding.
- To recover all assets and properties of the Debtor wherever located.
- To hear and determine matters concerning state, local and federal taxes pursuant to, inter alia §§ 346, 505, 525 and 1146 of the Bankruptcy Code.
- To hear and determine and pass upon any action or proceeding brought by the Trustee including, but not limited to, actions pursuant to §§ 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

11

- To hear and determine all actions and proceedings brought by the Trustee, arising in or relating to the Debtor's reorganization case or any issue arising under the Bankruptcy Code.
- To determine the validity, extent and priority of all liens against property of the Estate.
- To consider any modifications of the Plan pursuant to §1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation as defined in § 1101(2) of the Bankruptcy Code.
- To hear and determine all controversies, suits and disputes that may arise in connection with the interruption or enforcement of the Plan.
- To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of this proceeding, including the matters set forth herein, or if the Trustee elects to bring an action in any other forum, this Article V shall have no effect upon and shall not control, prohibit or limit the exercise of any jurisdiction by any other court having jurisdiction with respect to such matter.

## VIII.   OTHER PROVISIONS

### A.      Reservation of Rights Under § 1129(b)

The Debtor expressly reserves the right, pursuant to § 1129(b) of the Bankruptcy Code, to request the Court to confirm this Plan if all the applicable requirements of § 1129(a) of the Bankruptcy Code have been met other than those of § 1129(a)(8).

### B.      Payment.

Payment of the amounts due to Holders of Allowed Claims or Interests shall be made by a check of the Debtor delivered or mailed to each such Holder at such address as such Holder may direct by written notice to the Trustee from time to time.  In the absence of written notice of change of address, the Trustee may rely upon the last known address of such Holder.  Payment shall be deemed to have been made when a check of the Trustee is deposited in the United States mail, postage prepaid, properly addressed to the person entitled to receive such payment, subject to clearance of said check when presented for payment.  In the absence of any applicable statute to the contrary, if any issued check is not cashed within ninety (90) days of mailing, said check shall be deemed undeliverable.

### C.      Debtor Authorized

The Trustee shall be authorized to execute and deliver all documents and to take or cause to be taken all action necessary or appropriate to execute and implement the provisions of the Plan.

**D.     Interference with Plan**

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of the Plan and the payments to be made hereunder.

**E.     Payment of Allowed Claims**

Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments and distributions in respect of any Claim or interest which at such date or time is disputed, unliquidated or contingent shall not be made until such Claim or interest becomes an Allowed Claim, whereupon such payments and distributions shall be made promptly pursuant to and in accordance with the Plan.

**F.     Bar Dates for Administrative Claims and Claims Objections.**

The Bar Date for filing applications for administrative expenses, and applications for approval of fees and expenses under § 506(b) shall be 30 days after the Effective Date, for all administrative expenses incurred before Confirmation.  The Michigan Department of the Treasury shall not be entitled to an Administrative Expense Claim unless it complies with this procedure and the Court issues an order allowing such claims.

The Trustee shall file objections to Claims of any nature within 90 days after the Effective Date. The Holders of Claims who are liable with the Debtor on such claims shall not receive payment or be deemed Allowed Holders of Claims until they have determined, by Court Order or otherwise, which such Holder is entitled to payment, in accordance with §§ 502 and 509 of the Bankruptcy Code.

**G.     Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**H.     Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**I.     Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**J.     Notices**

All notices required to be made in or under this Plan shall be in writing and to the following:

**Debtor/Trustee:**     Complete Landscaping Systems, Inc. Liquidating Trust
David P. Eron, Trustee
229 E. William, Suite 100
Wichita, KS 62702
(316) 262-5500
(316) 262-5559 (fax)
david@eronlaw.net

**Other Parties:**     Notices to other parties shall be sent to a) the address designated in a request for notice filed with the bankruptcy court, b) the address listed on such party's proof of claim, or, c) if such party has not filed any documents with the bankruptcy court, at the address listed for such party on the creditor matrix filed by Debtor.

## K.     Successors and Assigns

Except as may be otherwise provided in this Plan, the rights and obligations of any entity named or referred to herein shall be binding upon, and shall inure to the benefit of, the successors and assigns of each such entity.

## L.     Extension of Payment Dates

If any payment under this Plan falls due on a Saturday, Sunday or other day that is not a business day, then such due date shall be extended to the next following business day.

## M.     Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Kansas.

## N.     Unclaimed Funds

After 180 days, any unclaimed funds shall be deemed forfeited and may be used by the Trustee to make other plan payments.

*By: /s/ Peter Salmeron*
Peter Salmeron, President
Complete Landscaping Systems, Inc.

14

ERON LAW, P.A.
Attorneys for Debtor

*/s/ David P. Eron*
DAVID P. ERON
Kansas Sup. Ct. No. 23429
229 E. William, Suite 100
Wichita, KS 67202
316-262-5500
316-262-5559 (fax)
david@eronlaw.net